# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BASSAM DARWISHAHMED** | : | **DOCKET NO. 07-1658** |
| | | **SECTION P** |
| **VS.** | : | |
| | | **JUDGE MINALDI** |
| **WARDEN FEDERAL DETENTION CENTER OAKDALE** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before this Court is a petition for writ of *habeas corpus* filed by Bassam Darwishahmed ("Petitioner") pursuant to 28 U.S.C. § 2241. This matter has been referred to this Court for report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Petitioner has been under a final removal order since April 11, 2007, and he has been in post-removal order detention since that time. In his petition, he challenges his post-removal order detention as being indefinite and unconstitutional. He claims that there is no significant likelihood of his being removed in the reasonably foreseeable future. In response to the petition, the Government argues that petitioner has not met his burden of showing that removal in the foreseeable future is unlikely.

Based upon the evidence in the record, this Court determined that an evidentiary hearing was necessary for the adjudication of the petition. An evidentiary hearing was held on July 8, 2008. Based on the evidence adduced at the hearing and the applicable law, it is **RECOMMENDED** that the petition for *habeas corpus* be **DENIED**.

**I.**

The following facts are undisputed. Petitioner was born in Nablus (Palestine), Israel, on November 16, 1972 and is a citizen of Jordan. On March 11, 2001, he was admitted into the United States as a visitor. On March 27, 2002, Petitioner filed an application to register as a permanent resident (I-485) or to adjust his status based on a marriage to a U.S. citizen and a Form I-130, Immediate Relative visa petition. On September 9, 2003, U.S. Immigration and Customs Enforcement (USICE) concluded that Petitioner was not eligible for an adjustment of his status to permanent resident. USICE observed:

> During an interview at the Memphis Service office, you disclosed that you were arrested by the Israeli police around 1990 in Nablus (Palestine) for throwing stones at the Israeli police. You stated that you were incarcerated for about 1-1/2 years. You stated that although you were detained for 1-1/2 years, there was never a conviction by an Israeli court. Our service contacted the American Embassy in Tel Aviv, Israel for support in providing any Israeli police or court records relating to your arrest.
>
> According to the information provided through the Department of State, American Embassy Tel Aviv, you appear to be identical to Ahamad Bassam Darwish, the son of Zakareya, born in Nablus on November 16, 1972, and Israeli ID # 900074683. Israeli police records indicate that you were involved in carrying weapon, ammunition, or explosive device devices, membership in an illegal association, and setting up a blockade. On September 25, 1991 you were convicted and imprisoned for two years. You were sentenced for 5 years probation not to do the same offense.

Doc. 8, Government Exhibit 6. The government noted that at an initial interview Petitioner was asked if he had ever participated in terrorist activity and that he replied that he had not. *Id.* After receiving the information set out above, Petitioner was again asked that question and admitted to being a member of Fateh (Al Fatah), a terrorist organization aligned with the Palestine Liberation Organization. *Id.*

On February 26, 2007, Petitioner was apprehended by the USICE and served with an immigration warrant for his arrest pending a determination of status by an immigration judge on February 27, 2007. The examining officer for the U.S. Citizenship and Immigration Services denied Darwishahmed's application for adjustment of his immigration status and noted:

> On February 26, 2007, ICE Senior Special Agent Faulconer participated in the JTTF arrest of Bassam Darwishahmed, a Jordanian citizen. Darwishahmed is currently a nonimmigrant overstay who has been indicted for false statements on a US government document (18 USC 1546), and false statements/conceal/cover-up a material fact (19 USC 1001). The indictment alleges Darwishahmad knowingly failed to disclose his foreign military service, membership in the Palestinian Authority/PLO, and his arrest/conviction for throwing Molotov cocktails at Israeli soldiers.

Doc. 8, Government Exhibit 6.

On February 28, 2007, an Immigration Judge denied Petitioner's request for a change in his custody status. The judge noted that he was without jurisdiction with respect to the custody determination because Petitioner was in the custody of the U.S. Marshall Service. Petitioner waived his right to an appeal. On March 12, 2007, an immigration detainer was issued to the U.S. Marshal Service in Memphis, Tennessee.

Petitioner was served with a Notice to Appear (NTA) before a U.S. Immigration Judge by USICE on April 3, 2007. The NTA charged that Petitioner remained within the United States for a longer time than permitted and was therefore subject to removal from the United States pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act (INA) [8 U.S.C. § 1227(a)(1)(B)]. The NTA also charged that Petitioner was subject to removal from the United States pursuant to § 237(a)(3)(B)(iii) of the INA [8 U.S.C. § 1227(a)(3)(B)(iii)] for having been convicted in the United States District Court for the Western District of Tennessee for a violation

of Title 18, United States Code, § 1546, "Fraud and Misuse of Visas, Permits, and Other Documents."

On April 11, 2007, Petitioner was ordered removed to Jordan and waived his right to appeal. Pursuant to that Order, a warrant for Petitioner's removal and a Form I-294, Warning to Alien Removed or Deported, were issued. USICE conducted an escort threat assessment during late April and early May 2007, which concluded that Petitioner was to be escorted by USICE officials upon his removal from the United States.

Petitioner cooperated with USICE officials in their efforts to effectuate his removal from the U.S. by providing all necessary information and by turning over his valid Palestinian passport, an expired Jordanian passport, and an Israeli ID card. A travel itinerary providing for an escorted removal of Petitioner from the United States was issued on June 12, 2007. However, due to maintenance problems with the aircraft which resulted in an inability to make the connecting flights, Petitioner was returned to the Federal Detention Center, Oakdale, Louisiana, to be rescheduled. On June 19, 2007, a second travel itinerary for a June 26, 2007 departure flight was issued for Petitioner. Petitioner was cleared for a charter flight in early July, 2007. Petitioner was transferred to Texas for a charter flight but was not permitted aboard the charter without authorization from Israel. Petitioner was returned to Oakdale.

On August 8, 2007, USICE requested that the Consulate General of Israel (in Houston, Texas) issue a travel document for Petitioner and provided a completed questionnaire for residents of the Palestinian Authority. By letter dated August 24, 2007, the Israeli Vice Consul responded with a copy of a March 3, 2004, agreement between the USICE and Israeli Government reached at a meeting at the Israeli Ministry of Foreign Affairs in Jerusalem.

According to the agreement a six step process governs the removal of Palestinians to Israel.

> First, the USICE must first inform the local Israeli consulate of a removal request which is to be accompanied by two copies of the removal request with attached photographs. The Israeli Consulate must then forward the request to the Consular Division of the Israeli Ministry of Foreign Affairs which will then forward the request to the Israeli Ministry of the Interior. The Israeli Consulate will be responsible for informing the USICE of a decision on any removal request. Once a removal request is approved by Israeli authorities, the removal may be effected using Palestinian or American travel documents. Israeli authorities will accept for this purpose the USICE Form I-269 on the condition the form include a photograph of the candidate for removal and [is] labeled "Laissez Passer" or "Travel Document."

> At least one week before the date of removal by charter flight, the USICE will forward to the Israeli Consulate nearest the airfield a list of Palestinians to be removed. This list should also include the information upon which the Israeli travel authorization was issued, a photocopy of the travel document with photograph, flight details, and the names and passport details of American escort officers. The Israeli Consulate must forward the details to the Israeli Ministry of Foreign Affairs to then be forwarded to the Israeli Ministry of Interior.

> The Interior Ministry must then inform the border crossing points of the planned arrival of the repatriated Palestinians. The final requirement is that deportees, personally accompanied by an American escort official, are to be transferred to Israeli officials stationed at the border crossing point.

Doc. 8, Government Exhibit 28. Pursuant to this agreement, the Israeli Vice Consul requested that USICE provide a request for authorization to remove an alien, a completed and signed questionnaire, and two pictures of Petitioner.

On August 9, 2007, Petitioner was served with notification that he was to undergo a file custody review or Post Order Custody Review (POCR) on or about September 6, 2007. He was also served with a Form I-229(a) Warning for Failure to Depart and an instruction sheet advising

detainees of the requirement of their assistance in obtaining a travel document.

On September 6, 2007, Petitioner was the subject of a post-order custody review undertaken pursuant to the provisions of Title 8, Code of Federal Regulations, Section 241.4(h), governing custody review procedures, and based upon consideration of the factors set forth within Title 8, Code of Federal Regulations, Section 241.4(f), which are the factors to be considered in determining whether to continue to detain or to release a detainee. The POCR review team noted that Petitioner came into USICE custody on April 3, 2007, and was the subject of a final order of removal dated April 11, 2007. The review team examined Petitioner's immigration history as well as his criminal history which involved fraud and misuse of visas, permits or other immigration documents by Petitioner. The review team also considered Petitioner's close family ties to his brother who lives within the United States. However, the review team noted the absence of community ties within the United States, the absence of any employment prospects and Petitioner's limited educational background. The review team also considered the status of Petitioner's removal from the United States and the efforts to obtain a travel document for Petitioner's repatriation. The review team noted that a request for a travel document was pending with the Israeli Consulate and that the completion of the process implemented for the repatriation of Palestinians through Israeli crossing points takes some time to complete.

The review team considered Petitioner, although not a threat to society within the United States, to be a flight risk and observed that if released, his knowledge of his high interest status with the Federal Bureau of Investigation would make it likely that he would try to disappear within the United States. Since Petitioner was to be removed as soon as approval from the

Consulate General of Israel was received, the review team recommended that Petitioner should be continued within the institutional custody of the USICE. On September 17, 2007, the Acting Field Office Director agreed and determined that Petitioner was to be continued in USICE custody and the matter was referred to the Headquarters Custody and Detention Unit of the USICE.

On September 26, 2007, Petitioner was served with the written detention decision of the Field Office Director. He filed the subject Petition for Writ of Habeas Corpus on October 3, 2007, arguing that there was no significant likelihood of his removal in the foreseeable future. The Government responded on December 18, 2007, and on December 26, 2007, Petitioner made his reply. The case was set for hearing, to occur on July 8, 2008. In Petitioner's pretrial statement, he pointed out that a secondary issue had arisen. Specifically, Darwishahmed's plea agreement in the Western District of Tennessee, Memphis Division, provided that Petitioner agreed to remain in custody until his actual removal from Tennessee without seeking release or bail.

At the hearing, this Court had the opportunity to note further developments. It was established through sworn testimony that USICE headquarters had made a determination on June 30, 2008 that Petitioner should remain in custody until his case had been reviewed again. It was also established that USICE had spoken with Vice-Consul for Israel on July 7, 2008, but that the foreign ministry in Israel had not yet approved Petitioner's transit through Israel. USICE confirmed that this approval was the only issue continuing to prevent Petitioner's deportation.

At the hearing, this Court also had the opportunity to hear the sworn statements of Jaine Alfaro, Department of Homeland Security, U.S. Immigration & Customs Enforcement, Office of

Detention and Removal located in the Washington D.C. Headquarters.  Mr. Alfaro testified that he acts as the liaison between the Office of Detention and Removal and Embassies of the Middle East, including Israel.  He also explained that he is responsible for ensuring Petitioner is able to cross Israel.  Mr. Alfaro explained that Israel controls entrance into the Palestinian territories through all open crossings, including through Jordan.  Mr. Alfaro further explained that it takes Israel between six months and a year to process this type of request.  Mr. Alfaro testified that headquarters came to him before denying Petitioner's release from custody and that he had determined that Petitioner's removal was likely to occur imminently.  Mr. Alfaro explained that although the criterion Israel uses to determine whether an approval is appropriate is unknown, it is known that such a request is taken from the Vice Consul in Houston to the Ministry of Foreign Affairs of Israel to the Ministry of Interior back to the Ministry of Foreign Affairs back to the Vice Consul.  Mr. Alfaro testified that he believed that an investigation of Petitioner had taken place by the Ministry of Interior and that the only thing remaining to be done was for the Ministry of Foreign Affairs to be contacted and for them to contact the Vice Consul.  Mr. Alfaro testified that based on his understanding of Petitioner's case, there is no reason to believe that he would be denied traverse through Israel.  He noted that usually denials are sent to the Vice Consul long before approvals.  He further testified that he believed that USICE would have Israeli approval for Petitioner's traverse by mid-August (approximately one year after USICE submitted its request to Israel).

## II.

Following an order of removal, the Attorney General is given 90 days to effect the removal of the alien. 8 U.S.C. § 1231(a)(1)(A).  However, "[a]n alien . . . who has been

determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . ." 8 USC § 1231(a)(6). In this case, USICE has determined that Petitioner is a flight risk and therefore unlikely to comply with the order of removal if released from detainment.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the United States Supreme Court held that in order for post-removal detention under 8 U.S.C. §1231 to be constitutional, it must be limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. The Court went on to recognize six months as a presumptively reasonable period of detention following a final order of removal. *Zadvydas,* 533 U.S. at 701. It is a federal district court's duty to gauge, "[w]hether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal [and thus] whether the detention is, or is not, pursuant to statutory authority. *Id.* at 699.

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. . . . And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

> Ordinary principles of judicial review in this area recognize primary Executive Branch responsibility. They counsel judges to give expert agencies decisionmaking leeway in matters that invoke their expertise. They recognize Executive Branch primacy in foreign policy matters. And they consequently require courts to listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise.

*Id.* at 699-700 (internal citations omitted).

In furtherance of these observations, the Court determined that the alien should bear the initial burden of proof in showing that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. Once the alien has met his or her burden, the Government must respond with evidence sufficient to rebut that showing. *Id.* Finally, as the period of prior post removal confinement grows, what counts as the reasonably foreseeable future abates. *Id.* Thus, the *Zadvydas* decision "creates no specific limits on detention[—]'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (quoting *Zadvydas*, 533 U.S. at 701).

In the present case, Petitioner has failed to meet his burden. Instead, the undisputed evidence before this Court indicates that Petitioner will likely be deported some time in August or early September. The evidence establishes that since the two previous failed attempts to remove Petitioner, USICE has diligently sought approval of the Israeli government for Petitioner's passage to the Palestinian Territories. Further, USICE has established that approval by the Israeli government is the only document still required to deport Petitioner. Finally, USICE has established that USICE is likely to receive the necessary travel document from Israel

for Petitioner by mid-August and that if Petitioner were to be denied traverse, such a determination most likely would have occurred several months prior to the July hearing before this Court.  Petitioner has offered nothing more than conclusory statements suggesting that he will not be removed in the foreseeable future and so fails to meet his burden.  *See Andrade*, 459 F.3d at 543-44 (holding that conclusory statements in support of the contention that a Petitioner will remain in custody without significant likelihood of removal in the foreseeable future fail to satisfy the initial burden of proof required by *Zadvydas*).

Further, the facts of this case place it squarely within the provisions of *Zadvydas* addressing the Executive's immigration related expertise.  This Court is counseled "to listen with care [to] the Government's foreign policy judgments, including, for example, the status of repatriation negotiations . . . and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise."  *Zadvydas*, 533 U.S. at 700.  It is apparent that negotiations with the Israeli Government are under way and that USICE believes they are nearing conclusion.

This Court concludes its judgment in favor of the Government with the *Zadvydas* Court's caveat:  "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Zadvydas*, 533 U.S. at 701.  If the USICE fails to secure traverse through Israel for Petitioner and to deport him by mid-September 2008, this Court would entertain again a Writ from Petitioner.

**III.**

Accordingly,

**IT IS RECOMMENDED** that this petition be **DENIED AND DISMISSED without prejudice**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed. R. Civ. Proc. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 30th day of July, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE